UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SDS KOREA CO. LTD.,**<br><br>           **Plaintiff,**<br><br>      v.<br><br>**SDS USA, INC.,** *et al.***,**<br><br>           **Defendants.** | Civ. No. 2:10-cv-4053 (WJM)<br><br>**MEMORANDUM OPINION** |

     **THIS MATTER** comes before the Court on Plaintiff's motion for default judgment against Defendant XM Systems, Inc. ("XM"), a South Korean corporation, pursuant to Federal Rule of Civil Procedure 55(b)(2). Plaintiff commenced this action on August 6, 2010 against SDS USA, Inc., iBend, LLC, Simon Song, and various John Doe defendants, seeking damages and injunctive relief for federal trademark infringement, copyright infringement, unfair competition, and related claims. Defendants all filed answers. Plaintiff thereafter represented that it learned that XM was also involved in the allegedly wrongful conduct and sought leave to amend to add XM and several related claims arising from the same factual allegations. Defendants opposed. The Court granted leave, and, on February 21, 2011, Plaintiff filed the Amended Complaint naming XM as a party and adding new, but related, claims against all Defendants. On May 10, 2012, the Court entered default judgment against XM in an amount to be determined and order Plaintiff to submit additional briefing and evidence on the issue of damages. ECF No. 57. On May 29, 2012, the Court entered a revised permanent injunction against XM. ECF No. 64. Also before the Court is Plaintiff's motion for an award of attorney's fees and costs. The Court has received Plaintiff's supplemental briefing, which includes documentary evidence and additional sworn declarations, and now has an adequate record from which to fix the appropriate judgment amount.

     Plaintiff requests compensatory damages for the profits it lost as a result of XM's patent infringement violations in the United States and further argues that the Court should treble the damages on the basis that XM willfully infringed and acted in bad faith. The Court finds that Plaintiff is entitled to lost profits and that an award of treble damages is appropriate.

Section 284 of the Patent Act provides, in pertinent part, that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284; see *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed.Cir. 1995). The amount of damages, or harm sustained by a patentee, is a question of fact, and "[w]hen the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 284. The phrase "damages adequate to compensate" means "full compensation for any damages' [the patentee] suffered as a result of the infringement," *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983), which includes any foreseeable lost profits the patentee can prove, *Grain Processing Corp. v. American Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed.Cir. 999). When basing alleged lost profits on lost sales, the patentee has an initial burden to show a reasonable probability that it would have made the asserted sales "but for" the infringement. *Grain Processing Corp.*, 185 F.3d at 1349.

A patentee who claims lost profits must show: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) capacity to exploit the demand in the absence of the infringing products; and (4) the amount of profit the patentee would have made. *See Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.1978); *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d at 1545 ("[ Panduit ] articulated a four-factor test that has since been accepted as a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages."). In calculating lost profits, absolute certainty is not required; rather, a party must only show with reasonable probability that he would have made additional sales in the absence of the infringing product. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353-54 (Fed.Cir. 2001).

Based on the undisputed record evidence, including the declarations of Kyong Chan Lim, President of the Plaintiff's U.S. Operations, Man Sik Cho, former Executive Director of XM, and Sang Moo Lee, former Auditor of XM, and invoices showing the sale of specific infringing products by XM, the Court finds that XM sold $799,580 worth of infringing products and that Plaintiff ordinarily would have enjoyed a profit of 35% on that amount. Plaintiff is thus entitled to compensatory damages of $279,853 for lost profits.

Pursuant to 35 U.S.C. § 284, a court may "increase the damages up to three times the amount found or assessed." Enhanced damages are punitive in nature and are based upon the conduct and culpability of the infringer. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed.Cir. 1996). An award of enhanced damages requires a showing of willful infringement, but a finding of willfulness does not mandate

2

enhanced damages, much less treble damages. *See Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1461 (Fed.Cir. 1998) (citations omitted). Rather, "the paramount determination . . . is the egregiousness of the defendant's conduct based on all the facts and circumstances. " *Id.* (quotation omitted). Thus, enhancement of damages is within the discretion of the district court and is informed by the totality of the circumstances. *See State Indus., Inc. v. Mor–Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed.Cir.1991). The Federal Circuit has provided district courts with several factors commonly referred to as the "Read factors" to consider when determining whether damages should be enhanced: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *See Read Corp. v. Portec, Inc.*, 970 F.2d at 826-27 (Fed.Cir. 1992) (*superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir. 1996)).

Based on the undisputed record evidence and an analysis of the Read factors, the Court finds that an award of enhanced damages is appropriate. Plaintiff has shown that XM's infringement was willful and has been ongoing since 2006, despite previous litigation and attempts to prevent infringement. XM has acted in bad faith and has not attempted to investigate the proper scope of the patents it infringed. Thus, the Court trebles Plaintiff's award for lost profits to $839,559.

Plaintiff also requests an award of attorney's fees and costs. Section 285 of the Patent Act provides for the "award [of] reasonable attorney fees to the prevailing party" in "exceptional" patent infringement cases. 35 U.S.C. § 285. To determine whether to award fees, a court should undertake a two-step process: (1) whether the prevailing party has proven by clear and convincing evidence, that the case is "exceptional."; and (2) whether an award of fees is appropriate. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed.Cir. 2003). Exceptional circumstances include willful infringement, misconduct, and vexatious or frivolous litigation. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000). XM's continuous and ongoing willful infringement justifies a finding that this case is "exceptional" and, accordingly, an award of attorney's fees.

The amount of the award is assessed at the discretion of the district court, but in determining the reasonableness of the award, the Court must find some evidence to support the reasonableness of, *inter alia*, the billing rate charged and

the number of hours expended. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). Here, the facial value of Plaintiff's total request for fees and costs is surprisingly high in light of the procedural posture of this case – Plaintiff requests $120,045.99 for obtaining a default judgment against XM. That amount includes $111,073.50 in fees and $8,972.49 in costs. But, on further reflection of the facts and history of the litigation and the billing information provided by Plaintiff, the request appears more reasonable. This was a complicated infringement action and required Plaintiff's counsel to become acquainted with international service procedures and attempt service in a foreign country. Plaintiff only learned of the level of XM's involvement after the litigation had begun, and Plaintiff had to litigate the issue of adding XM as a defendant – which the other defendants opposed. The Court also notes that Plaintiff has strived to limit its request for fees and costs to only those expenses which it believes are associated with its litigation against XM in particular.

But the Court notes that on review of Plaintiff's filings that a full award of the requested amount is not reasonable. First, the Court notes that while Plaintiff's amendment was to add XM as a party, at least some of the litigation costs associated with that amendment arose because of the acts of the other defendants; the Court does not believe that it would be reasonable to award that entire amount against XM based on the present record and a reduction is appropriate to avoid as much. The Court also notes that it denied Plaintiff's original motion for default judgment, *see* ECF No. 53, and thus an additional reduction is appropriate to account for the fact that Plaintiff was unsuccessful in its first attempt. The Court also notes that at least some entries in Plaintiff's filings appear to be connected to Plaintiff's litigation in Korea against XM and not clearly connected to merely enforcing this Court's orders in that foreign jurisdiction – a reduction is also appropriate to account for this. Finally, the Court finds that the overall number of hours counsel expended, to the extent the Court is able to make such calculations on the basis of these filings, was slightly higher than would be reasonable given that the proceedings against XM never advanced to include in-depth discovery or complex motion practice, other than for default judgment. To reflect these findings, the Court will reduce the overall award of fees by 10% but will award the full amount of expenses, all of which appear reasonable.[1]

---

[1] Plaintiff's fee application does not indicate individual hourly rates for the attorneys or the time spent on particular assignments: it only provides amounts charged. While this provides the Court with information necessary to assess the reasonableness of Plaintiff's fee request, it makes line-by-line reduction of fees or calculation of the lodestar amount difficult. As such, the Court will resort to this modest, across-the-board reduction, rather than a more precise entry-by-entry calculation. The Court finds that this reduction is reasonable under the circumstances and does

In sum, the Court will award Plaintiff's $839,559 in lost profits, $99,966.15 in fees, and $8,972.49 in expenses, for a total award of $948,497.64.[2] An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

not wish to force Plaintiff to incur additional fees in making yet another supplemental filing, especially in light of the fact that those additional fees likely would not be part of any final award.

[2] Pursuant to 28 U.S.C. § 1961, Plaintiff will also be entitled to post-judgment interest on the total amount, as calculated in accordance with subsection (a) of that statute.